HARRIS LLP
DAVID J. HARRIS, JR. (286204)
david@harrisllp.com
GERILYN R. HARRIS (286031)
gerilyn@harrisllp.com
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 213-1102

*Attorneys for Plaintiff and
the Putative Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE INFANTE, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TOYOTA MOTOR CORPORATION and TOYOTA MOTOR NORTH AMERICA, INC.,<br><br>    Defendants. | Case No. 5:25-cv-00428<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>(1) CONSUMER LEGAL REMEDIES ACT, Cal. Civ. Code §§ 1750, *et seq.*<br><br>(2) SONG-BEVERLY CONSUMER WARRANTY ACT, Cal. Civ. Code §§ 1790, *et seq.*<br><br>(3) FALSE ADVERTISING LAW, Cal. Bus. & Prof. Code §§ 17500, *et seq.*<br><br>(4) UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §§ 17200, *et seq.*<br><br>\*ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF\* |

CLASS ACTION COMPLAINT

Pursuant to Fed. R. Civ. P. 23, Plaintiff Valerie Infante brings this class action individually, and on behalf of all other persons who purchased or leased a 2024 Toyota Corolla in the State of California. Plaintiff makes the following allegations based on the investigation of her counsel, and based on personal knowledge as to herself and her experiences and dealings with the Defendants, Toyota Motor Corporation ("TMC") and Toyota Motor North America, Inc. ("TMNA") (collectively, "Toyota"). Plaintiff and her counsel believe that substantial, additional evidentiary support will exist for the facts alleged herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.    When road conditions force drivers to slam on their brakes, drivers reasonably expect their brakes to engage, and their cars to decelerate. This was certainly Plaintiff's expectation when she paid $30,000 for a brand new, 2024 Toyota Corolla in September of 2023. Yet Plaintiff's experience with her new Corolla proved to be quite different, just a few months after her purchase.

2.    On March 16, 2024, Plaintiff was driving with her kids in heavy-volume, slow-moving traffic on Interstate 15 in San Bernadino County. Traffic congestion started to ease, allowing Plaintiff and other surrounding drivers to gradually accelerate, up to almost 40 mph in a 65 mph zone. As Plaintiff and the surrounding traffic reached about 40 mph, there were at least 75 yards of open space between Plaintiff's Corolla and the next vehicle in front of her.

3.    Soon, however, Plaintiff saw another driver in a lane to her right change into her lane, at a good distance in front of her; this driver's car was now the nearest car in front of Plaintiff in her lane. Immediately after this driver changed into Plaintiff's lane, Plaintiff saw him brake hard and fast. When Plaintiff first saw him slam on his brakes, there were still at least 60 yards of open space between Plaintiff's car and his car. Yet in response to his car's sudden hard-braking, Plaintiff likewise braked suddenly and reflexively, applying heavy force to her Corolla's brake pedal to avoid any potential collision. When Plaintiff did that, however, nothing happened.

4.    Plaintiff's Corolla did not respond at all; her car did not brake or otherwise decelerate, even as Plaintiff was slamming her brake pedal down, through its range of motion, for multiple seconds on end. Plaintiff's car continued to roll forward toward the car in front of her for several seconds, at about 38 mph, as if she was not touching the brake pedal, when in fact she was

2

depressing the brake pedal decisively, with full force. Plaintiff's teenage son, sitting in the passenger seat, heard the pedal being forcefully pressed down.

5.    Plaintiff's Corolla continued to roll down the highway unabated, for approximately three seconds, at a speed of about 38 mph. After multiple seconds of Plaintiff's car *not* responding to her braking, her car rolled to within about 15 yards of the car in front of her, at about 36 mph. At this point, about 1.5 seconds before impact, her car's "Automatic Emergency Braking" system engaged, and rapidly slowed her car to a speed of about 10 to 15 mph at the moment of impact.

6.    Plaintiff's Corolla crashed into the vehicle in front of her, at approximately 10 to 15 mph, resulting in significant damage to her and the other driver's vehicle. Fortunately, although Plaintiff's Corolla was totaled, no human being was killed or hospitalized.

7.    Given the trauma of Plaintiff's experience, and the newness of her car, she contacted Toyota about her incident, and returned her car to Toyota for the company to conduct its own, diagnostic inspection of the vehicle.

8.    Toyota possessed and inspected Plaintiff's car soon after the collision, and retrieved and analyzed her car's computer records, using a Crash Data Retrieval System ("CDR" or "System"). The System's data records falsely displayed that Plaintiff never pressed the brake pedal—even slightly—at any time during the last 4.86 seconds before impact. The System also (more accurately) showed that the car's Automatic Emergency Braking had engaged about 1.5 seconds before impact. The truth is that Plaintiff had slammed her brake pedal down forcefully, for multiple seconds before (and while) the car's Automatic Emergency Braking was engaged. The car simply failed to respond to, or digitally record, Plaintiff's forceful pressing of her brake pedal throughout the several seconds immediately before impact.

9.    After inspecting Plaintiff's Corolla for multiple days post-collision, Toyota (specifically, TMNA) sent Plaintiff a letter dated April 29, 2024 ("Letter"), refusing to accept responsibility for her Corolla's life-threatening brake failure. *See* Ex. A. Toyota implicitly asserted that, upon its physical inspection of the car, there were no flaws or defects in the car's braking system. *Id.* The Letter also stated: "The Event Data Recorder (EDR) recorded that your vehicle was travelling at approximately 38 mph leading up to the impact *and when the brakes were applied*

3

CLASS ACTION COMPLAINT

*just prior to the impact, the vehicle's speed decreased*." *Id.* (emphasis added). While partially true, that assertion was and remains a misleading mischaracterization of the car's actual EDR data.

10. Specifically, Toyota's Letter misleading omits that the car's EDR data (falsely) states the brake *pedal* was never "applied," throughout the last 4.86 seconds before impact. Toyota's Letter omits this material fact, fraudulently concealing the inconsistency between Plaintiff's experience on the one hand, and her car's data records on the other hand, as to whether she pressed her brake pedal before impact. *Id.* The car's EDR data also (more accurately) suggests that Plaintiff's car physically and audibly alerted her of an imminent collision, and started braking hard automatically, about 1.5 seconds before impact, but that Plaintiff *still* never touched the brake pedal. Even apart from Plaintiff's word, her car's data records are implausible unless she was materially impaired, distracted, or unconscious leading up to the collision. In fact, as both Plaintiff and her kids can attest, she was none of those things before or during the collision. Instead, Plaintiff was awake, sober, and fully focused on the road in front of her, trying desperately to slow her car down with her foot, for multiple seconds, *before and while* Automatic Emergency Braking kicked in. The car's internal data-records, however, *falsely* state that Plaintiff's brake pedal remained untouched throughout the last five seconds leading up to the collision.

11. The only explanation for Plaintiff's experience is that her car manifested a significant and dangerous, technological defect in its braking system. When the driver of a 2024 Toyota Corolla presses their brake pedal, what's *supposed* to happen is that an electronic, brake pedal stroke sensor ("Sensor") detects the brake pedal's precise, physical position in relation to the brake pedal's default position. The car's computer system expresses the Sensor's pedal-position as a percentage; 0% means that the brake pedal is in its default, unpressed position; 100% means that the brake pedal has been pressed down through its full range of motion.

12. Once the Sensor detects movement of the brake pedal, it is *supposed* to transmit the pedal's position data to the car's Electronic Control Unit ("ECU"). The ECU should then process the pedal's position-percentage and algorithmically determine the optimal amount of braking force to apply against each wheel, based on the car's speed, loading, and other conditions. Yet this is not what Plaintiff's Corolla did on March 16, 2024, which was the first time that Plaintiff ever

4

CLASS ACTION COMPLAINT

reflexively and forcefully slammed the brake pedal in her new car.

13.    Her Corolla's braking technology completely failed, at a critical moment on the road.  The Corolla's ECU and EDR falsely processed and recorded that Plaintiff's "Brake Pedal Position" remained at "0%"—for nearly five seconds before impact—when in fact Plaintiff had been forcing her car's brake pedal down for most or all of those five seconds.  The brake pedal was *not* in its default position during that time, but instead, being pressed down hard by Plaintiff's foot.

14.    A serious and dangerous defect in the 2024 Corolla's braking technology ("Brake Defect") prevented Plaintiff's car from properly decelerating for multiple seconds, during a critical time while driving.  This Brake Defect is not (and cannot be) unique to Plaintiff's car, as Toyota has designed and manufactured all of its 2024 Corolla vehicles with similar, highly computerized braking systems.  Whatever the precise origin of this Brake Defect is—be it a defective brake pedal Sensor, poor ECU software programming, or faulty computer hardware or wiring in the braking system—this Defect must be thoroughly diagnosed and remediated as soon as possible for the sake of public safety.  Plaintiff, on behalf of herself and the putative Class, demands relief to (a) redress the significant economic injuries Toyota has caused, and (b) prevent more serious, physical injuries to Class Members and others in the future.

**PARTIES**

15.    Plaintiff Valerie Infante is a citizen of the State of California residing in San Bernardino County.  She has decades of driving experience, with no prior accidents as a driver, and only one prior moving violation, ticketed for going 71 mph in a 60 mph zone many years ago.  At the time of the accident described *supra*, she was driving carefully and competently, as she has for many years, with her three minor children in the car with her.

16.    Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation located at 1 Toyota-Cho, Toyota City, Aichi Prefecture, 471-8571, Japan. TMC is the parent corporation of TMNA. TMC has substantial control over TMNA, and TMNA acts for the benefit of TMC.  At all relevant times, TMC acted in the United States by itself and through TMNA and its other various entities, including in California. TMC, itself and through TMNA and its other various entities, is in the business of designing, engineering, testing, validating, manufacturing, marketing, and selling

5

1  Toyota branded vehicles throughout the United States, including within California.

2      17.    Defendant Toyota Motor North America, Inc. ("TMNA") is incorporated in

3  California, with its primary address at 6565 Headquarters Dr., Plano, Texas 75024. TMNA is a

4  holding company of sales, manufacturing, engineering, and research and development subsidiaries

5  of Toyota Motor Corporation located in the United States. TMNA is in the business of designing,

6  engineering, testing, validating, manufacturing, marketing, and selling Toyota branded vehicles

7  throughout the United States, including within California.

8                                    **JURISDICTION AND VENUE**

9      18.    Subject matter jurisdiction is proper in this Court pursuant to the Class Action

10 Fairness Act, 28 U.S.C. § 1332(d), because Plaintiff and putative Class Members are citizens of

11 California, while Defendant TMC is a citizen of a foreign state, and the aggregate amount in

12 controversy exceeds $5,000,000.00, exclusive of interest and costs.

13     19.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial

14 part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and

15 Defendants have caused harm to Plaintiff and other Class Members within this District.

16                              **ADDITIONAL FACTUAL ALLEGATIONS**

17 **Toyota's Misleading Representations And Omissions Regarding The 2024 Corolla**

18     20.    At all relevant times, Toyota's overarching marketing message has been that its

19 2024 Corolla vehicles are safe and reliable.  That message was and is materially false and

20 misleading, given the existence of the Brake Defect described herein, which manifested to

21 Plaintiff's extreme surprise and detriment in March 2024.

22     21.    Toyota is one of the ten largest advertising spenders in the United States, with much

23 of its advertising focused on promoting its vehicles as safe and dependable.  *See, e.g.,*

24 https://www.toyota.com/usa/sustainability/safety (last visited Jan. 9, 2025).

25     22.    Through its pervasive marketing in California and nationwide, Toyota induced

26 Plaintiff and other car buyers to purchase or lease its 2024 Corolla on the premise that it would be

27 safe and reliable in its basic functions, including but not limited to its braking function.  For

28 example, Toyota's website advertised its 2024 Corolla as equipped with *Toyota Safety Sense™ 3.0*,

6

CLASS ACTION COMPLAINT

purposrtedly a state-of-the-art computer system that includes dynamic, distance-based cruise control, steering and lane departure assistance, and the Automatic Emergency Braking which ultimately slowed Plaintiff's collision speed from what would have been about 36 mph to about 10 or 15 mph. *Id.*; *see also* The 2024 Toyota Corolla | Toyota.com (last visited Jan. 9, 2025).

23.    On Toyota's main website, there is a page describing the company's leadership, repeating its consistent and pervasive marketing message that Toyota vehicles are safe and dependable. Toyota states: "We build cars and trucks that help you and your family go places reliably and safely." Toyota USA | Our Story (last visited Jan. 9, 2025).

24.    Toyota's website contains and has always contained those and similar representations at all relevant times. Toyota's TV, internet, radio, and point-of-sale advertisements for its 2024 Corollas have contained similar representations at all relevant times, upon which Plaintiff reasonably relied when paying thirty thousand dollars in cash for her new vehicle.

25.    A car with a defective braking system, that can cause the car *not* to respond to a driver's sudden, reflexive braking, is not a safe car. Thus, Toyota's consistent and pervasive marketing of its 2024 Corollas as "safe" and "reliable" was and is false and misleading, and omitted facts that would be important to a reasonable consumer in deciding to buy a new car. Specifically, Toyota's consistent and pervasive advertisements of safety and reliability misleadingly omitted— and still omit—the fact that 2024 Corollas carry a dangerous, technological Brake Defect as described herein, one creating a serious risk that the car's brakes will fail to respond at certain times and/or under certain circumstances, when the brake pedal is suddenly and forcefully pressed.

26.    Toyota's marketing of its 2024 Corolla vehicles to Plaintiff and other Class Members conveyed a clear, uniform, and pervasive message: namely, that these cars would be safe and reliable in their basic functions. Vehicle safety is material to reasonable consumers when purchasing or leasing any vehicle, and was a significant—if not the most significant—factor motivating Plaintiff's and other Class Members' decisions to purchase or lease their 2024 Corollas.

27.    Toyota has failed to disclose to its actual and potential customers that its 2024 Corolla vehicles suffer from the Brake Defect described herein, creating a dangerous risk of the car's brakes failing to perform in critical moments, just as Plaintiff experienced in March 2024.

CLASS ACTION COMPLAINT

**Nature Of The 2024 Corolla's Brake Defect Experienced By Plaintiff**

28.     Plaintiff regularly drove her new Corolla without incident from early September 2023 through early March 2024.  Plaintiff used her car's brake pedal normally and routinely throughout that time period, but she never needed (or acted) to press her brake pedal suddenly and forcefully during that time period.

29.     The first time that Plaintiff ever pressed her Corolla's brake pedal suddenly, reflexively, and forcefully was on March 16, 2024, under the circumstances described in ¶¶2-6, *supra*.  And that time, her car utterly failed to respond to her hard-braking, for multiple seconds, resulting in a significant collision that totaled her car.  *Id.*

30.     Consistent with the Corolla's real-time lack of response to Plaintiff's braking in March 2024, the car's automated Event Data Recorder ("EDR") and Crash Data Retrieval ("CDR") systems "recorded" and reported (falsely) that Plaintiff's brake pedal *remained unmoved throughout the last five seconds before impact*.  Specifically, the car's internal "Crash Data" reflected the following data points for the final five seconds before impact.

**PRE-CRASH DATA: -5 TO 0 SECONDS (MOST RECENT EVENT, TRG 1)**

| Time (sec) | Vehicle Speed (mph) | Accelerator Pedal, % Full (%) | Brake Pedal Position Info (%) |
|---|---|---|---|
| -4.86 | 38.5 | 0 | 0 |
| -4.36 | 38.5 | 0 | 0 |
| -3.86 | 38.5 | 0 | 0 |
| -3.36 | 38.5 | 0 | 0 |
| -2.86 | 38.5 | 0 | 0 |
| -2.36 | 38.5 | 0 | 0 |
| -1.86 | 38.5 | 0 | 0 |
| -1.36 | 35.4 | 0 | 0 |
| -0.86 | 24.9 | 0 | 0 |
| -0.36 | 16.8 | 0 | 0 |
| 0 | 9.9 | 0 | 0 |

CLASS ACTION COMPLAINT

31. The above data records from Plaintiff's car were and are materially inaccurate because, for most or all of the five seconds before impact, Plaintiff was forcefully pressing her brake pedal downward, such that the brake pedal was *not* in its default, 0% "Position"; the car *behaved and recorded* as if the brake pedal was unpressed, but the simple truth is that the brake pedal was pressed: and forcefully so. Plaintiff was pressing the Brake Pedal's "Position" down—through its range of motion—to what should have recorded at or near "100%," rather than "0%."

32. Additional data provided by Toyota, purportedly from the same EDR and CDR Systems, suggests that Plaintiff's Corolla began audibly alerting her of an imminent collision, and began braking hard automatically, about 1 to 1.5 seconds before impact.

**PRE-CRASH DATA: -5 TO 0 SECONDS (MOST RECENT EVENT, TRG 1)**

| Time (sec) | Vehicle Speed (mph) | PCS-ALM Request Flag | PCS-PBA Request Flag | Autonomous emergency braking (AEB) System Status |
|---|---|---|---|---|
| -4.86 | 38.5 | OFF | OFF | On but Non-engaged (On and not activated) |
| -4.36 | 38.5 | OFF | OFF | On but Non-engaged (On and not activated) |
| -3.86 | 38.5 | OFF | OFF | On but Non-engaged (On and not activated) |
| -3.36 | 38.5 | OFF | OFF | On but Non-engaged (On and not activated) |
| -2.86 | 38.5 | OFF | OFF | On but Non-engaged (On and not activated) |
| -2.36 | 38.5 | OFF | OFF | On but Non-engaged (On and not activated) |
| -1.86 | 38.5 | OFF | OFF | On but Non-engaged (On and not activated) |
| -1.36 | 35.4 | ON | ON | On but Non-engaged (On and not activated) |
| -0.86 | 24.9 | ON | ON | Engaged (On and active) |
| -0.36 | 16.8 | ON | ON | Engaged (On and active) |
| 0 | 9.9 | ON | ON | Engaged (On and active) |

33. The "PCS-ALM Request Flag" is part of the 2024 Corolla's "Pre-Collision System" (or "PCS"). This flag indicates whether there is an active alarm ("ALM") related to the Pre-Collision System. When the Pre-Collision System detects an impending crash, it triggers an alarm

9

CLASS ACTION COMPLAINT

or warning to physically alert the driver; the above data "Flag" is a record of that alarm-action being triggered in the vehicle, *at least* 1.36 seconds before impact.  Thus, the above data suggests that Plaintiff's car physically alerted her to an imminent crash approximately 1.5 seconds before impact.

34.    The "PCS-PBA Request Flag" stands for "Pre-Collision Brake Assist" ("PBA").  This flag indicates whether the Corolla's automated "brake assist" function is actively "requesting" that braking force be applied to help prevent or mitigate an imminent collision.  When this "Request Flag" is set to "ON," it means the car has activated its automatic braking response.  Thus, the above data table suggests that Plaintiff's Corolla began physically braking hard on its own—in addition to sounding an alarm—more than a full second before impact.

35.    Yet the car's data records falsely suggest that, even in response to the car's sudden alarm, and automatic hard-braking, Plaintiff *still* never touched her brake pedal: at any point during the last five seconds before impact.  The above, inaccurate data records reflect and evidence a real-time manifestation of the 2024 Corollas' Brake Defect, rather than evidencing that Plaintiff was somehow asleep or impaired or distracted at the wheel in March 2024.  She was not; she was awake, sober, and focused on driving, and was driving competently, lawfully, and reasonably at all moments leading up to the collision.

36.    Either the brake pedal Sensor in Plaintiff's Corolla completely failed to detect her sudden, forceful braking, or the Corolla's ECU software otherwise failed to accurately receive, process, and record the "Brake Pedal Position" detected by the Sensor.  Such failures most likely result from a software error, or an electrical failure involving the Corolla's Sensor or ECU.  In any event, a serious and dangerous defect in the 2024 Corolla's braking technology prevented Plaintiff's car from decelerating—at her command—for nearly five full seconds in a critical driving scenario.

37.    The Brake Defect experienced by Plaintiff in March 2024 is not the first, dangerous brake defect that Toyota has created in its recent Corolla models.  For example, in September 2024, Toyota was forced to recall certain 2023-2024 Corolla Cross models because of *a software error* in the Corolla Cross's braking system.  Specifically, Toyota discovered that a software error in its 2023-2024 Corolla Cross's skid control ECU could cause a failure to regulate brake fluid pressure while turning, and a failure of the car's "power brake assist" mechanism, resulting in extended

10

stopping distances and increasing the risk of a crash.  Approximately 42,000 2023-2024 Corolla Cross vehicles were affected by this software defect in the car's braking system.

38.    In November 2024, Toyota was forced to expand that recall to include *another* 103,000 vehicles, because Toyota discovered that "certain Corolla Hybrid vehicles produced from May 2022 to November 2024" exhibited the exact same defect. https://pressroom.toyota.com/toyota-recalls-certain-model-year-2023-2024-toyota-corolla-cross-hybrid-vehicles/ (last visited Jan. 20, 2025).  "In certain situations," Toyota announced, "during brake application when turning a corner, a driver may temporarily experience a hard brake pedal that can cause the stopping distance to be more than expected [and] increase the risk of a crash." *Id.*  Toyota's proposed remedy for this defect, impacting ~145,000 of its newest Corolla models, was to "update the programming of the skid control ECU software," in hopes that changing the ECU's programming would allow its cars to reliably brake while turning.  *Id.*

39.    Plaintiff's 2024 Corolla was not one of the "Cross" or "Hybrid" subtypes, but rather, a 2024 Corolla LE, a standard four-door sedan with a gasoline engine.  Plaintiff did not specifically experience "a hard brake pedal," but rather (a) a *non-responsive* brake pedal; and (b) "ECU software" that failed to *process or record* her pressing of the brake pedal at all, as reflected in the data tables above.  Given the newness of all 2024 Corolla subtypes, and Toyota's recent announcement and expansion of its safety recall—first for its new Corolla Crosses in September 2024, and then for its new Corolla Hybrids in November 2024—it is plausible that Toyota has yet to publicly identify *all* of the "skid control ECU software" errors "program[ed]" into *all* of its 2024 Corolla subtypes, including but not limited to Plaintiff's and other Class Members' 2024 Corolla LE sedans.

40.    Indeed, at least one other owner of Toyota's new, four-door Corolla sedan (apart from Plaintiff) has lodged a complaint with the National Highway Traffic Safety Administration ("NHTSA"), alleging that "either the braking system or the computer system failed" to decelerate their vehicle, "[d]espite the driver pressing the brakes." *See* https://www.nhtsa.gov/vehicle/2024/TOYOTA/COROLLA/4%252520DR/FWD#complaints (last visited Jan. 20, 2025).

11

CLASS ACTION COMPLAINT

November 15, 2024 **NHTSA ID NUMBER: 11625494**

**Components: UNKNOWN OR OTHER, SERVICE BRAKES, FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11625494

**Incident Date** August 30, 2024

**Consumer Location** GARLAND, TX

**Vehicle Identification Number** 5YFS4MCEXRP****

**Summary of Complaint**

**Crash Yes**

**Fire No**

**Injuries 2**

**Deaths 0**

[XXX] In reading the above article, Toyota recalled Corolla Cross Hybrid vehicles with many complaints and situations mirroring our accident. *Before the accident, the vehicle displayed no warning signs*. Despite the driver pressing the brakes and the assisted braking feature seemingly turning on (e.g., signal lights on the computer system), *neither seemed to work in this situation*. The damage was far too severe for the assisted braking feature to have activated, *along with the driver pressing the brakes*. After viewing the matter with those involved in the accident, many of us concurred that *we believe either the braking system or the computer system failed*. In the aftermath of the accident, the police, manufacturer, or third party hadn't reviewed the vehicle's status. On top of that, our insurance refused to investigate, urging us to discuss the matter with Toyota. Thus, we'd propose that the Corolla SE may experience an issue similar to the vehicles in the article.

*Id.* (emphasis added).

41.    Plaintiff's frightening experience on the road in March 2024 was, in all likelihood, the result of an "ECU software" error or other technological error, which prevented her Corolla's ECU from accurately receiving, processing, and recording the true "Brake Pedal Position" that Plaintiff was applying with her foot, during the five seconds immediately before her crash.  This Brake Defect, which Plaintiff experienced, is distinct from the defect that Toyota has publicly acknowledged in its recall of ~145,000 Corolla Crosses and Corolla Hybrids; it does not appear to be the exact same software error, but rather, a different software error or other technological failure. The Brake Defect identified herein remains unaddressed by Toyota's existing recall campaign.

CLASS ACTION COMPLAINT

**Applicable Warranties**

42.     Toyota has marketed, sold and leased its 2024 Corollas with written, express warranties.  Specifically, Toyota offered a written express, "Basic" warranty covering all components except for normal wear and tear, for 36 months or 36,000 miles.

43.     Toyota provided such written warranties to Plaintiff and the Class upon their purchases and leases of 2024 Corollas, and they had no pre-sale ability to bargain as to the terms of such warranties.

44.     Toyota breached its express warranty to Plaintiff, when Plaintiff brought her damaged and defective Corolla to Toyota for inspection, and for a refund and/or repair of the braking system.  Following Toyota's inspection of Plaintiff's damaged and defective car, TNMA responded to Plaintiff's repeated refund and repair requests by Letter, denying the existence of any Brake Defect, and refusing to remedy the Defect in any way.  Plaintiff did not receive the benefit of any repair or remedy for the manifested Brake Defect in her Corolla; indeed, no Class Member has received any repair or remedy for this Brake Defect, because Toyota does not have any such repair or remedy available to date.

**Financial Harm to Plaintiff and the Class**

45.     Toyota marketed its 2024 Corollas to Plaintiff and the Class as safe, as dependable, and as products of high-quality materials and technology.  Yet Toyota failed to disclose before, at, or after the times of Plaintiff's and the Class's purchases the existence, effects, and dangers of the Brake Defect described herein.  Toyota also failed to disclose that its 2024 Corollas' braking systems and components were not fit for their ordinary purpose.

46.     Toyota's deceptive marketing and failure to disclose the 2024 Corolla's Brake Defect damaged, and continues to damage, Plaintiff and the Class. If Plaintiff and the Class had known of the Brake Defect, and thus known that 2024 Corollas were not safe and reliable cars, they would not have purchased or leased their 2024 Corollas at all, much less at the full prices they paid.

47.     Plaintiff paid a total of approximately $30,000.00 for a brand new, 2024 Corolla in September 2023, on the false premise that the car's braking system was not inherently and dangerously defective.  But her Corolla's undisclosed Brake Defect manifested just a few months

CLASS ACTION COMPLAINT

later, on March 16, 2024, causing a serious collision, and resulting in Plaintiff's car being deemed a total loss by her insurance company.  Plaintiff estimates that she and other Class Members, collectively, have paid at least tens of millions of dollars that they would not otherwise have paid for their 2024 Corollas, if Toyota had lawfully disclosed the nature, existence, and dangers of the Brake Defect alleged herein.

## CLASS ALLEGATIONS

48.    Plaintiff brings this action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all other current or former owners and lessees of any 2024 Toyota Corolla (including any subtype) that was purchased or leased within the State of California (the "Class").  Excluded from the Class are Defendants and any of their affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns.  Plaintiff reserves the right to modify or amend her definition of the Class, and to add additional classes and sub-classes, as appropriate during the course of this litigation.

49.    The Class Members alleged herein are so numerous that individual joinder of all Class Members is impracticable.  Toyota has sold its 2024 Corollas, beginning in late 2023 and continuing through today, to at least thousands of persons within the State of California.

50.    This action involves inherently common questions of law and fact, which predominate over any questions affecting only individual Class Members.  Such common questions include, but are not limited to:

(a)   whether Toyota's 2024 Corollas contain a dangerous, technological Brake Defect as alleged herein;

(b)  whether Toyota falsely and misleadingly advertised its 2024 Corolla vehicles as safe and reliable throughout California and the United States;

(c)  whether and when Toyota had actual or constructive knowledge of, or recklessly disregarded, the fact that its 2024 Corolla vehicles contain the Brake Defect alleged herein;

(d)  whether Toyota's acts, omissions, misrepresentations, and conduct alleged herein violate California law;

(e)   whether Toyota breached its express and implied warranties to Plaintiff and the

14

Class for its 2024 Corolla vehicles by reason of the Brake Defect alleged herein;

(f)    whether Toyota's failure to disclose the Brake Defect to Class Members was and is likely to deceive the reasonable consumer and/or a significant segment of the public;

(g)    whether the Brake Defect alleged herein would be material to the reasonable consumer and to the market value of a 2024 Corolla;

(h)    whether Plaintiff and the Class objectively and substantially overpaid for their Corollas by reason of the Brake Defect alleged herein;

(i)    whether Class Members are entitled to full or partial restitution of the purchase prices of their 2024 Corollas;

(j)    whether Plaintiff and the Class are entitled to damages, and if so, the proper method(s) for measuring damages as a matter of law; and

(k)    whether the Class is entitled to injunctive relief.

51.    Plaintiff's claims are typical of other Class Members' claims, as all Class Members bought or leased a 2024 Toyota Corolla, containing the same technological Brake Defect described herein, based on similar safety advertisements.  Neither Plaintiff nor other Class Members would have bought or leased a 2024 Corolla, or paid as much as they did for their cars, had they known about this Brake Defect and the life-threatening risks it creates for unwitting drivers and passengers. Plaintiff and the Class suffered financial harm as a direct and proximate result of the same wrongful practices and course of conduct in which Toyota engaged.

52.    Plaintiff is adequate to represent the Class because she is a Member of the Class for whom the Brake Defect alleged herein manifested, without warning, and caused a serious collision that placed her and her kids' personal safety at heightened risk.  Plaintiff's interest in this action does not conflict with the interests of other Class Members.  Plaintiff intends to zealously prosecute this case for the Class's benefit, and has retained counsel competent and experienced in litigating complex class action lawsuits.  Plaintiff will fairly and adequately protect the Class's interests.

53.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and there are no unusual difficulties that are likely to arise in the management of this case as a class action.  The burdens and expenses of individually litigating

CLASS ACTION COMPLAINT

Plaintiff's and other Class Members' claims far exceed the financial harm and damages suffered by Plaintiff and individual Class Members; it would thus be impracticable for other Class Members to individually seek redress for Defendants' wrongful conduct.

**COUNT I**
**Violations of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of Plaintiff and the Class)**

54.     Plaintiff incorporates by reference each and every allegation in this complaint as if fully set forth in this paragraph.

55.     Defendants are "persons" as defined by Cal. Civ. Code § 1761(c).

56.     Plaintiff is a "consumer" within the meaning of Cal. Civ. Code § 1761(d), as she purchased a 2024 Toyota Corolla for personal, family, and household uses.

57.     Sales and leases of 2024 Toyota Corollas to Plaintiff and the Class are "transaction[s]" within the meaning of Cal. Civ. Code § 1761(e).

58.     Defendants' acts, omissions, practices and conduct, which were all intended to result and did result in the sale of at least thousands of 2024 Corollas to Plaintiff and other Class Members, violated and continue to violate Cal. Civ. Code § 1770 for the following reasons, at minimum:

(a)     Defendants represented to Plaintiff and the Class that their 2024 Toyota Corollas have characteristics, uses and benefits that the cars do not have;

(b)     Defendants represented to Plaintiff and the Class that their 2024 Toyota Corollas are of a particular standard, quality, or grade, when in fact they are not; and

(c)     Defendants represented to Plaintiff and the Class that 2024 Toyota Corollas have been supplied in accordance with Toyota's pervasive representations of safety and reliability when the cars have not been so supplied.

59.     By failing to disclose and concealing the defective nature of the 2024 Corollas from Plaintiff and the Class Members, Defendants violated California Civil Code § 1761(a), representing that the 2024 Corollas have characteristics and benefits that they do not have and that the cars' basic braking functionality was of a particular standard, quality, or grade when it was of another. Cal. Civ. Code §§ 1770(a)(5), (7), and (16).

16

CLASS ACTION COMPLAINT

60.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

61.    Defendants knew that their 2024 Corollas suffered from an inherent Brake Defect, were defectively designed or manufactured, and were not suitable for their intended use. The Brake Defect was and is in each of the 2024 Corollas at the time of sale or lease, but may not be discovered by individual Class Members until months, or years, after purchase or signing.  Indeed, Defendants knew, or should have known, that 2024 Corollas contain the Brake Defect and thus present a substantial danger of bodily injury or death for drivers and passengers, as well as pedestrians.

62.    As a result of their reliance on Defendants' material omissions and/or misrepresentations, owners and lessees of 2024 Corollas have suffered ascertainable losses of money, property, and economic value.

63.    Defendants had a duty to disclose to Plaintiff and the Class the true facts about the existence and nature of the Brake Defect alleged herein because Defendants were at all relevant times in a superior position to know all such facts.  Plaintiff and the Class could not reasonably have learned or discovered that their vehicles had a dangerous Brake Defect, unless and until that Defect manifested, as it did in Plaintiff's case.

64.    A reasonable consumer would have deemed the facts which Defendants concealed or did not disclose to be very significant in deciding whether to purchase or lease a 2024 Corolla. Had Plaintiff and the Class known of the Brake Defect alleged herein, they would not have purchased or leased 2024 Corollas at all, much less paid full price for them.

65.    Plaintiff and the Class are reasonable consumers who expect their new vehicles to immediately and reliably decelerate in response to their pressing of the brake pedal while driving—regardless of the various designs, components, and technologies that are utilized in the vehicles' braking functionality.  This is an objectively reasonable expectation for all consumer automobiles.

66.    As a result of Defendants' conduct, Plaintiff and the Class have been economically harmed.  Specifically, in Plaintiff's case, the Brake Defect in her Corolla directly caused a serious collision and physical damage resulting in the total loss of Plaintiff's car, for which she paid

17

approximately $30,000.00 in cash six months prior. Other Class Members were, are, and will be harmed—economically, and potentially physically—because their 2024 Corollas suffer from the same Brake Defect, which renders their cars unsafe to drive, regardless of whether Class Members yet know of the Defect, or whether the Defect has yet manifested in their (relatively new) vehicles. *E.g.,* ¶40, *supra.* Had Defendants disclosed the true nature and/or dangers of the Brake Defect in their 2024 Corollas, Plaintiff and the Class would not have bought or leased such vehicles. At this time, Plaintiff and the putative Class do *not* request, demand, or seek damages at law for Defendants' violations of Cal. Civ. Code § 1770(a). Instead, Plaintiff and the Class simply reserve their statutory rights to amend this complaint to include a request for damages under the Consumer Legal Remedies Act ("CLRA") at a later date, if necessary, after Plaintiff complies with the notice requirement of Cal. Civ. Code § 1782(a) (which she has not yet done). For the time being, Plaintiff and the putative Class here demand *only* injunctive relief, restitution, and other *equitable* relief from Defendants' violations of Cal Civ. Code § 1770(a).

## COUNT II
### Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (On Behalf of Plaintiff and the Class)

67.    Plaintiff incorporates by reference each and every allegation in this complaint as if fully set forth in this paragraph.

68.    California Business & Professions Code § 17500 makes it unlawful for any person to:

> make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

69.    From 2023 to the present, Toyota continuously and pervasively made, disseminated, and caused to be made and disseminated, before the public nationwide and throughout California,

18

statements and assertions that 2024 Toyota Corolla vehicles were safe and reliable in their basic functions. Toyota made such assertions through numerous media, publications, and advertising devices, including, but not limited to, print media, nationwide and statewide television and radio commercials, Toyota's website, myriad Internet advertisements optimized to appear in response to consumers' uses of popular web-search engines such as Google and Microsoft Bing, digital ads on popular mobile phone applications, among other publications and advertising devices. Plaintiff and the Class were repeatedly exposed to and reasonably relied upon the representations of Toyota—a household name throughout California and the United States—regarding the safety and dependability of Toyota's vehicles, including but not limited to 2024 Corollas.

70. Defendants' continuous and pervasive representations were objectively untrue and misleading, due to the existence of the Brake Defect identified herein, which was known or should have been known to Toyota before, during, and after Plaintiff and the Class purchased their Corollas.

71. Toyota's misleading statements regarding safety and dependability were made with the company's knowledge of the Brake Defect, or alternatively, with recklessness and without the exercise of reasonable care, which would have revealed to Defendants the 2024 Corollas' Brake Defect.

72. Toyota's lack of reasonable care is exemplified in its handling of the software error discovered in its Corolla Cross braking systems. *See* ¶¶37-41, *supra*. Rather than conducting a full review and recall of *all its Corolla subtypes having similar braking software*—which would have been the reasonable approach—Defendants limited their September 2024 recall to only Corolla Cross vehicles, despite their other Corolla subtypes having similar braking software. In doing so, Toyota left *over 100,000* of its other cars out on the road with similarly defective braking software, for another two months, when Toyota should have immediately recalled all Corolla subtypes having similar braking systems and software.

73. Toyota's lack of reasonable care is further exemplified in the fact that it failed to properly diagnose or even investigate any software issue in Plaintiff's car following the collision she reported to Toyota in March of 2024. Specifically, in response to Plaintiff informing Toyota

CLASS ACTION COMPLAINT

that she had "applied [her] brakes" by slamming her brake pedal, but that her "vehicle did not slow down or stop," Toyota inspected only the *physical* components of her car's braking system (*see* Ex. A), without reviewing the car's brake-related software and technology for errors or defects, despite knowing that such software and technology directly command and control the car's physical braking components in the ordinary course of operation.

74.    Toyota also issued Plaintiff a materially misleading Letter regarding its review of her car's EDR and CDR data from her crash.  The Letter acknowledged Plaintiff's assertion that *she* had "applied [her] brakes," and asserted the following in response: "[t]he Event Data Recorder (EDR) recorded that . . . *when the brakes were applied* just prior to impact, the vehicle's speed decreased." Ex. A (emphasis added).  Toyota's response was intentionally misleading, because the truth known to Toyota was: the EDR actually "recorded that" *Plaintiff never "applied [her] brakes,"* or her accelerator, "leading up to the impact."  *Compare* Ex. A, *with* ¶¶30-34, *supra*. Toyota concealed this material truth in its Letter to Plaintiff, to purposefully conceal from Plaintiff the fact that her Corolla's EDR contradicted her personal experience on whether *she* "applied [her] brakes." Ex. A.

75.    As a layperson, Plaintiff was unable to understand or interpret her car's EDR and CDR data herself, as Toyota presented all such data to her in a series of complex and disjointed data tables and documents, in formats far more voluminous and complex than the simplified tables presented herein (¶¶30-34, *supra*).  If Toyota were acting in good faith, sincerely investigating the possibility of a Brake Defect, then it would have had no reason to conceal from Plaintiff the truth about her car's EDR data: namely, that it says she never moved the brake pedal.  If Toyota were acting in good faith, then it would have *disclosed* to Plaintiff the truth that her car's EDR *completely contradicted* her assertion that she "applied [her] brakes," and either (a) conducted a further investigation into the car's braking software and technology, such as the brake pedal Sensor, skid control ECU, and all related software and technology, or (b) simply dismissed as *not credible* Plaintiff's story of having "applied [her] brakes," given the car's clear data records to the contrary. That Toyota intentionally misled Plaintiff in its Letter suggests that Toyota had—and continues to have—something to hide regarding the braking technology in its 2024 Corollas.

CLASS ACTION COMPLAINT

76.     Additionally, when Toyota sent its Letter to Plaintiff on April 29, 2024, Toyota had recently reviewed a field report from a dealership in Japan, relaying an allegedly serious defect in the Corolla Cross's braking system.  Despite that recent report from another dealership, about another Corolla subtype's brake failure, Toyota did not attempt (or disclose any attempt) to reproduce, or to otherwise thoroughly investigate, the Brake Defect reported by Plaintiff.

77.     At all relevant times, Toyota acted with actual knowledge of, and reckless disregard for, the fact that its 2024 Corollas contain a dangerous Brake Defect as alleged herein, and failed to exercise reasonable care before, during, and after the times when it advertised and sold such vehicles to Plaintiff and the Class as safe and dependable vehicles.

**COUNT III**

**Violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.***
**Express Warranty**
**(On Behalf of Plaintiff and the Class)**

78.     Plaintiff incorporates by reference each and every allegation in this complaint as if fully set forth in this paragraph.

79.     Plaintiff and the Class Members are "buyer[s]" as defined under Cal. Civ. Code § 1791(b).

80.     The 2024 Toyota Corollas purchased and leased by Plaintiff and the Class are "consumer good[s]" under Cal. Civ. Code § 1791(a), as well as "new motor vehicle[s]" under Cal. Civ. Code § 1793.22(e)(2).

81.     Toyota was at all relevant times the manufacturer, distributor, warrantor, lessor, and/or seller of 2024 Toyota Corollas, and knew or had reason to know of the specific use for which such vehicles were purchased and leased by Plaintiff and other Class Members.

82.     Upon Plaintiff's and the Class's purchases of their 2024 Corollas, Toyota provided them with a standard, express warranty called "Basic Coverage," which was good for "36 months/36,000 miles, whichever occurs first, from the date of first use and covers *all components* other than normal wear and maintenance items.  This warranty covers repairs and adjustments needed to correct defects in materials or workmanship or any part supplied by Toyota, subject to exceptions."

21

83.    Toyota breached its express warranty to Plaintiff and other Class Members by reason of the Brake Defect alleged herein, which involves "components" of the 2024 Corolla's braking system—including but not limited to the brake pedal Sensor, brake actuator assembly, and skid control ECU—and by virtue of Toyota's willful and fraudulent refusal to even acknowledge any Brake Defect, much less to service or repair Plaintiff's or other Class Members' cars to conform to Toyota's express warranty.   In fact, Toyota had and continues to have no available repair method for the Brake Defect in Plaintiff's and the Class's Corollas, as Toyota continues to *deny and conceal* the known existence of such Brake Defect.  Ex. A.; *see also* ¶¶73-77.

84.    Toyota has refused to provide Plaintiff with any refund for her newly purchased vehicle, despite Plaintiff's requests before, during and after the time of Toyota's deceptive "inspection" of her car.  Ex. A.  Toyota also has no actual or proposed fix for the life-threatening Brake Defect identified herein.

85.    As a direct and proximate cause of Toyota's breach of its express warranty, Plaintiff and the Class have sustained damages and other losses in amounts to be determined at trial. Defendants' conduct has directly harmed Plaintiff and the Class, who are entitled to recover under Cal. Civ. Code § 1794, including civil penalties, actual damages, consequential damages, diminution in value, costs, attorneys' fees, and/or other relief as the Court deems appropriate.

**COUNT IV**
**Violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.***
**Implied Warranties**
**(On Behalf of Plaintiff and the Class)**

86.    Plaintiff hereby incorporates by reference the allegations contained in all other paragraphs of this complaint, as if fully set forth herein.

87.    Under the Song-Beverly Consumer Warranty Act, all express warranties are accompanied by the implied warranty of merchantability, which may not be disclaimed by the manufacturer or retail seller.  Toyota provided Plaintiff and the Class with an implied warranty that its 2024 Corollas, including the cars' components and parts, were merchantable and fit for the ordinary purposes for which they were sold. However, 2024 Corollas were not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, among other things, the

22

CLASS ACTION COMPLAINT

vehicles suffered from an inherent Brake Defect at the time of sale, and thus were and are not fit for their particular purpose of providing safe and reliable transportation.

88.    Toyota impliedly warranted that its 2024 Corollas were of merchantable quality and fit for their particular purpose. Toyota's implied warranty included, *inter alia*: (a) a warranty that the vehicles manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (b) a warranty that the vehicles would be fit for their intended use while being operated.

89.    Contrary to the applicable implied warranties, Toyota's 2024 Corollas at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing reliable, durable, and safe transportation. Instead, these vehicles were and are fundamentally defective as described herein, and have deprived Plaintiff and the Class of the benefits of their bargains.

90.    Plaintiff has given Toyota multiple, reasonable opportunities to cure its warranty breaches, but Toyota cannot and/or will not do so despite the fact that doing so is reasonably within Toyota's control. *See, e.g.,* Ex. A.

91.    As a direct and proximate cause of Toyota's breach of implied warranties, Plaintiff and the Class have sustained damages and other losses in amounts to be determined at trial. Defendants' conduct has directly harmed Plaintiff and the Class, who are entitled to recover under Cal. Civ. Code § 1794, including civil penalties, actual damages, consequential damages, diminution in value, costs, attorneys' fees, and/or other relief as the Court deems appropriate.

**COUNT V**
**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**Unlawful Prong**
**(On Behalf of Plaintiff and the Class)**

92.    Plaintiff hereby incorporates by reference the allegations contained in all other paragraphs of this complaint, as if fully set forth herein.

93.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Toyota's acts and omissions with respect to Plaintiff and the Class were unlawful under: (a) the Consumer Legal

23

Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; (b) the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and (c) the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.*

94.   As a direct and proximate result of Toyota's unlawful conduct described above, Plaintiff and the Class have lost money and property by purchasing and leasing dangerous and defective Corolla vehicles at full retail prices—in Plaintiff's case, approximately $30,000—when Plaintiff and the Class would not otherwise have done so.

95.   Plaintiff, on behalf of herself and the Class, and as appropriate, on behalf of the general public, seeks permanent injunctive relief prohibiting Defendants from continuing to market, sell or lease 2024 Corolla vehicles containing the undisclosed Brake Defect, and such other equitable relief, including full restitution of all payments that Plaintiff and the Class made for their defective vehicles.

**COUNT VI**
**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**Fraudulent Prong**
**(On Behalf of Plaintiff and the Class)**

96.   Plaintiff hereby incorporates by reference the allegations contained in all other paragraphs of this complaint, as if fully set forth herein.

97.   Toyota's affirmative misrepresentations and materially misleading omissions to Plaintiff and the Class regarding its Corolla vehicles were fraudulent within the meaning of Cal. Bus. & Prof. §§ 17200, *et seq.*

98.   Plaintiff and other Class Members are consumers who reasonably expect their vehicles to decelerate immediately and consistently upon the application of their cars' brake pedals—at all times, and under all driving conditions—rather than continuing to roll forward unabated for several seconds or more while the brake pedal is being forcefully pressed.

99.   Defendants knew that their 2024 Corolla vehicles contained inherent braking defects, were defectively designed or manufactured, would fail to brake properly, and were not suitable for their intended use.

100.   Toyota was at all relevant times under a duty to Plaintiff and other Class Members

to disclose the Brake Defect because Toyota was in a superior position to know the true state of facts about such Defect, and because Plaintiff and the Class cannot be, and could never have been, reasonably expected to learn of or discover the Brake Defect unless and until it manifested or manifests in the future.  In failing to disclose the Brake Defect to Plaintiff and the Class, Defendants have knowingly and intentionally, and with deliberate recklessness, concealed material facts and breached their duties not to do so.

101.    A reasonable consumer would have considered the facts which Defendants concealed to be important in deciding whether to purchase or lease a 2024 Toyota Corolla. Had Plaintiff and the Class known of the Brake Defect embedded within such vehicles, they would never have purchased or leased their vehicles, much less for the full prices that they paid.

102.    Defendants have continued to fraudulently conceal the defective nature of their 2024 Corolla vehicles, even after consumers like Plaintiff have reported serious, life-threatening problems with the cars' braking system.  *E.g.,* Ex. A; ¶40, *supra*. Defendants continue to cover up and conceal the true nature of the Brake Defect to this day.

103.    Defendants' acts, omissions, conduct, and practices were fraudulent, in that they constituted business practices and acts that were likely to deceive reasonable members of the public.

104.    Plaintiff, on behalf of herself and the Class, and as appropriate, on behalf of the general public, seeks permanent injunctive relief prohibiting Defendants from continuing to market, sell or lease vehicles containing the undisclosed Brake Defect, and other equitable relief, including full restitution of all payments that Plaintiff and the Class made for their defective vehicles.

**COUNT VII**
**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**Unfair Prong**
**(On Behalf of Plaintiff and the Class)**

105.    Plaintiff hereby incorporates by reference the allegations contained in all other paragraphs of this complaint, as if fully set forth herein.

106.    Toyota's acts, omissions, conduct, and practices were unfair in that they constituted business practices and acts, the utility of which does not outweigh the corresponding harm to

consumers. Defendants' business acts and practices were also unfair in that they offend established public policies in California, and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

107. There is no benefit to consumers, competition, or the general public in allowing Toyota to market and sell cars that suffer from serious defects in their braking systems, while publicly advertising such cars as safe and dependable for human transportation. The severity of public harm resulting from such conduct could not be higher, as it is both economically damaging and life-threatening: not only for Plaintiff and the Class, but also for other drivers, passengers and pedestrians out on the road.

108. Moreover, in refusing to refund, repair or replace Plaintiff's vehicle after the Brake Defect manifested in her car, Toyota acted unreasonably—and unfairly—by misleadingly representing to Plaintiff that the car's EDR "recorded" that her "brakes were applied just prior to the impact," and by concealing the truth that the car's EDR "recorded" *her* as having *never* "applied [her] brakes." Ex. A. The only fair thing for Toyota to do upon its post-collision inspection of Plaintiff's car—and its review of the car's EDR and CDR data—was to: (a) tell Plaintiff the truth that her car's computer *contradicted her story* of having forcefully depressed the brake pedal "just prior to the impact," and (b) act accordingly, rather than misleadingly acting as if the car's computer records were *consistent with Plaintiff's story* of having "applied [her] brakes." Ex. A. Toyota's post-inspection representations and conduct were independently fraudulent, misleading, and injurious to Plaintiff in her extensive efforts to have Toyota honor its warranties for, and advertisements of, her new car.

109. Plaintiff, on behalf of herself and the Class, and as appropriate, on behalf of the general public, seeks permanent injunctive relief prohibiting Defendants from continuing to market, sell or lease 2024 Corolla vehicles containing the undisclosed Brake Defect, and seeks other equitable relief, including restitution of all payments that Plaintiff and the Class made for their cars.

26

CLASS ACTION COMPLAINT

1

**PRAYER FOR RELIEF**

2

    WHEREFORE, Plaintiff demands judgment against Defendants as follows:

3

    A.    Determining that the instant action may be maintained as a class action under Rule

4

23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as Class Representative, and the

5

law firm of Harris LLP as Class Counsel;

6

    B.    Requiring Defendants to pay the actual and consequential damages, civil penalties

7

and diminution in value sustained by Plaintiff and the Class by reason of the acts and transactions

8

alleged herein, as well as punitive damages, under Division 3, Part 4, Title 1.7 of the California

9

Civil Code;

10

    C.    For an order of restitution necessary to restore to Plaintiff and each Class member

11

all money and personal property which they paid for their vehicles due to Defendants' unlawful

12

conduct as described herein;

13

    D.    For an order permanently and publicly enjoining Defendants from engaging in the

14

unlawful and unfair business acts and practices alleged herein;

15

    E.    For an order that Defendants pay Plaintiff's and the Class's reasonable attorneys'

16

fees, expert fees, and all other costs and expenses of this case; and

17

    F.    Ordering such other relief as the Court may deem just and proper.

18

**JURY DEMAND**

19

Plaintiff hereby demands a trial by jury.

20

Dated: February 14, 2025                 Respectfully submitted,

21

                             HARRIS LLP

22

                             By:   *s/ David J. Harris, Jr.*

23

                             David J. Harris, Jr. (SBN 286204)
david@harrisllp.com

24

                             Gerilyn R. Harris (SBN 286031)

25

                             gerilyn@harrisllp.com
501 West Broadway, Suite 800

26

                             San Diego, California 92101
Telephone: (619) 213-1102

27

28

                             *Counsel for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT